UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE
——————————————————————
                                                    :
BASF CORPORATION,                                   :
                                                    :
                                    Plaintiff,      :
                                                    :
                        v.                          :         Consol. Court No. 13-00318
                                                    :
UNITED STATES,                                      :
                                                    :
                                    Defendant.      :
——————————————————————:

## **ORDER**

Upon considering defendant's motion for reconsideration, plaintiff's response in opposition thereto, and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that defendant's motion for reconsideration be, and hereby is, denied.

_____
Joseph A. Laroski, Jr., Judge

Dated: _____
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE
_____

|  |  |  |
|---|---|---|
| | : | |
| BASF CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Consol. Court No. 13-00318 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

_____

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION FOR RECONSIDERATION

Frederic D. Van Arnam, Jr.
Ashley J. Bodden
BARNES, RICHARDSON & COLBURN, LLP
45 Broadway, Suite 3130
New York, New York 10006

Tel: (212) 725-0200, ex. 126
rvanarnam@barnesrichardson.com
*Attorneys for Plaintiff*

Dated:       July 2, 2025
             New York, New York

TABLE OF CONTENTS

Page

TABLE OF CONTENTS..................................................................... i

TABLE OF AUTHORITIES ........................................................ii-iii

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR RECONSIDERATION........................................................1

SUMMARY OF THE COURT'S DECISION .............................................1

ARGUMENT ......................................................................4

    I.      Standard of Review
            for Motion for Reconsideration ...............................................4

    II.     The Government Seeks to Relitigate Its
            Position Instead of Identifying Manifest Errors or
            Fundamental Flaws in the Court's Thorough Decision.....................4

            A.     The Court Did Not Overlook Critical
                     Information Needed to Define "Extract" ...................................5

            B.     The Court Classified the
                     Imported Merchandise in
                     its Condition as Imported ......................................................10

            C.     The Court Correctly Found that the
                     Imported Merchandise Contains the Essence of Fish ..................11

CONCLUSIONS .......................................................................14

CERTIFICATE OF COMPLIANCE.......................................................15

TABLE OF AUTHORITIES

<u>CASES</u>                                                                                          <u>PAGE</u>

*Archer Daniels Midland Co. v. United States,*
561 F.3d 1308 (Fed. Cir. 2009) ..................................................................................9

*BASF Corp. v. United States*, No. 13-00318,
*Slip-Op. 25-54* (CIT 2025). ........................................................................ *Passim*

*Bausch & Lomb, Inc. v. United States,*
148 F. 3d 1363 (Fed. Cir. 1998) ...............................................................................12

*Ford Motor Co. v. United States*
30 CIT 1587 (2006) .....................................................................................................9

*Int'l Custom Prods. v. United States,*
991 F. Supp. 2d 1335 (2014), *aff'd,* 791 F.3d 1329 (Fed. Cir. 2015)...........................5

*Jarvis Clark Co. v. United States,*
733 F.2d 873 (Fed. Cir. 1984) ....................................................................................1

*Jedwards Int'l, Inc. v. United States,*
161 F. Supp. 3d 1354 (CIT 2016) ...............................................................2, 7, 8, 10

*Kachurin Drug Co. v. United States*
24 Cust. Ct. 264 (1950) ............................................................................................10

*Marcor Development Corp. v. United States,*
926 F. Supp. 1124 (1996) ..........................................................................2, 3, 7, 8, 10

*Mitsubishi Power Americas, Inc. v. United States,*
Slip Op. 25-53, 2025 WL 1233625 (Ct. Int'l Trade April 29, 2025).........................10

*Rollerblade, Inc. v. United States,*
282 F.3d 1349 (Fed. Cir. 2014) .................................................................................10

*Since Hardware (Guangzhou) Co. v. United States,*
37 F.Supp.3d 1354 (CIT 2014), *aff'd without opinion,*
2016 U.S. App., LEXIS 2522 (Fed. Cir., Feb. 8, 2016) ...................................... 1, 4, 8

*United States v. Gold Mountain Coffee, Ltd.,*
601 F. Supp. 212 (CIT 1984) .......................................................................................4

*Universal Elects., Inc. v. United States*
112 F.3d 488 (Fed. Cir. 1997) ..................................................................12, 13

*V.G. Nahrgang Co. v. United States*
6 CIT 210 (1983) ......................................................................................4, 11

## STATUTES AND REGULATIONS

USCIT Rule 7 ...................................................................................................1

USCIT Rule 59 ..............................................................................................1, 4

General Rules of Interpretation ......................................................................8

Heading 1603 ........................................................................................*passim*

Heading 2106 ............................................................................................2, 4

## OTHER AUTHORITIES

*Explanatory Notes to the Harmonized Commodity
Description and Coding System* to Section 16.03 ...........................................*passim*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR., JUDGE

_____
                                        :
BASF CORPORATION,                       :
                                        :
                    Plaintiff,          :
                                        :
            v.                          :        Consol. Court No. 13-00318
                                        :
UNITED STATES,                          :
                                        :
                    Defendant.          :
_____:

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

Pursuant to Rules 7 and 59 of the Rules of the U.S. Court of International Trade ("CIT"), Plaintiff, BASF Corporation ("BASF" or "plaintiff") respectfully submits this response in opposition to Defendant's ("Government" or "defendant") Motion for Reconsideration, Def. Mot. for Rec., (May 30, 2025) ("Def. MR"), ECF No. 87. Contrary to the requirements of CIT Rule 59, the Government has not identified any "fundamental or significant flaw" in the Court's decision but rather seeks to "re-litigate" the case, which is not a basis for reconsideration. *Since Hardware (Guangzhou) Co. v. United States*, 37 F.Supp.3d 1354, 1359 (CIT 2014), *aff'd without opinion*, 2016 U.S. App., LEXIS 2522 (Fed. Cir., Feb. 8, 2016). For the reasons stated herein, the Government's motion for reconsideration must be denied.

## SUMMARY OF THE COURT'S DECISION

On May 2, 2025, this Court issued its decision granting BASF's motion for summary judgment and denying the Government's cross motion for summary

judgment. *BASF Corp. v. United States*, No. 13-00318, *Slip-Op. 25-54* (CIT 2025). In its opinion, the Court construed the legal meanings of the relevant tariff provisions at issue, and then held that the imported merchandise, fish oil ethyl ester concentrates, were "extracts . . . of . . . fish" within the scope of *eo nomine* heading 1603 of the Harmonized Tariff Schedule of the United States ("HTSUS"). *Slip Op. 25-54*, at 6. The Court had before it the parties' briefs and oral argument on these issues, and informed by this advocacy, the Court classified the imported merchandise under heading 1603 and not under either headings 3824 or 2106, both of which are catch-all, basket provisions. *Id.* at 21.

The Court followed the process known well to those who practice before the U.S. Court of International Trade.  Recognizing it has a statutory mandate to "'reach a correct result" under *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984), this Court appropriately explored the common and commercial meaning of the tariff term "extract." *Slip Op. 25-54,* at 9-19. The Court cited existing case law construing "extract" to mean "a preparation containing the essence of the substance from which it is derived," *Jedwards Int'l, Inc., v. United States*, 161 F. Supp. 3d 1354, 1357–58 (CIT 2016), and "the common thread of the various dictionary definitions of 'extract' is that an extract must maintain the essence of the main source," *Marcor Dev. Corp. v. United States*, 926 F. Supp. 1124, 1132 (CIT 1996). *Slip Op. 25-54*, at 12.

Using these and other legal building blocks to construe the legal meaning of the term "extracts . . .  of . . . fish," the Court concluded that the term captured

imported merchandise that "maintains the essence of the fish source." *Id.* at 12. The Court then turned to the facts, the majority of which were stipulated by the parties as uncontested, to determine whether the imported merchandise was an extract of heading 1603 because it maintained the essence of the fish source. *Id.* at 12.  The facts established, and the Court so found, that the imported merchandise maintained the essence of fish because it:  1) consists almost entirely of the same substances (fatty acids, glycerides, oligomers, and triglycerides) found in the fish source from which the imported merchandise was derived; 2) remained in liquid form; 3) continued to bear some resemblance to the fish source in color, taste, and odor; and, 4) offered the same health benefits as the fish source. *Id.* at 14.

In so finding, the Court confirmed that the fish oil from which BASF produced the imported merchandise was part of the flesh and organic structure of fish. *Id.* at 21. The Court noted that the definition of the tariff term "fish" set out in the *Marcor* decision --the "flesh or organic structure of the animal fish" – was consistent with earlier decisions of the U.S. Customs Court and the U.S. Court of Customs Appeals.  Furthermore, the Court noted that these and other earlier decisions had never defined the term "fish" narrowly for tariff purposes, contrary to the Government's argument. *Id.* at 20. As such, the imported merchandise, being a preparation containing the essence of the substance from which it was derived, and with fish oil being part of the organic structure of the fish source, falls within the plain meaning of the *eo nomine* reference to "extracts . . . of  . . . fish."  Having classified the goods under the *eo nomine* heading, the Court properly rejected both

heading 3824 and 2106 as alternatives, given that they are both catch-all, basket provisions that are not as specific as heading 1603.

## **ARGUMENT**

### I.  **Standard of Review for Motion for Reconsideration**

Under USCIT Rule 59, a motion for reconsideration "do[es] not permit an unsuccessful party to re-litigate a case, but [is] supposed to address a fundamental or significant flaw in the original proceeding." *Since Hardware (Guangzhou) Co.*, 37 F.Supp.3d 1354, 1359 (CIT 2014), *aff'd without opinion*, 2016 U.S. App., LEXIS 2522 (Fed. Cir., Feb. 8, 2016). For this reason, a court's decision must be found manifestly erroneous before it can be disturbed. *Id.*  Reconsideration may be appropriate for cases where there is:

> (1) an error or irregularity in the trial; (2) a serious evidentiary flaw; (3) a discovery of important new evidence which was not available even to the diligent party at the time of trial; or (4) an occurrence at trial in the nature of an accident or unpredictable surprise or unavoidable mistake which impaired a party's ability to adequately present its case."

*United States v. Gold Mountain Coffee, Ltd.*, 601 F. Supp. 212 (CIT 1984), c*iting*

*V.G. Nahrgang Co. v. United States,* 6 CIT 210, 211 (1983).

### II.  **The Government Seeks to Relitigate Its Position Instead of Identifying Manifest Errors or Fundamental Flaws in the Court's Thorough Decision**

The Government fails to identify any "manifest error or fundamental flaw" in the Court's decision warranting reconsideration.  Instead, it seeks to relitigate this case by raising in it motion arguments and facts already considered and rejected by

this Court. "Revisiting claims that have already been decided against [a party], without invoking one of the four grounds discussed infra, is an attempt to re-litigate the case, [and] is not permitted in a motion for reconsideration." *Int'l Custom Prods. v. United States*, 991 F. Supp. 2d 1335, 1338 (2014), *aff'd,* 791 F.3d 1329 (Fed. Cir. 2015). Therefore, the Government's motion must be denied.

### A. The Court Did Not Overlook Critical Information Needed to Define "Extract"

To begin, the Government argues that this Court overlooked parts of Explanatory Note 16.03, which it claims established that "extracts are used for making certain food preparations such as soups … and sauces" and that "such extracts therefore have characteristics similar to those of meat extracts." Def. MR at ECF No. 87 at p. 4. To the contrary, the Government previously made that same argument to this Court on three separate occasions, so for it to now argue that "critical guidance from the Explanatory Note was overlooked . . .," *id.*, is baseless.

First, in the Government's Cross-Motion for Summary Judgment, it argued that this Court could construe the common and commercial meaning of the tariff term "extract" using dictionaries, encyclopedias, scientific authorities, and other reliable information sources, which the Government stated included the *Explanatory Notes to the Harmonized Commodity Description and Coding System*. ("*ENs*"). Def. Mem. in Supp. Of Cross-Mot. for Sum. J., ECF No. 71 (July 2, 2024) ("Cross Motion") at 10. Later in its Cross-Motion, the Government expressly called to the attention of the Court the *ENs* to 16.03, and quoted extensively from it:

> Were there any doubt about the appropriate construction of
> heading 1603, Explanatory Note 16.03 confirms that the phrase
> '[e]xtracts … of … fish' refers to concentrated fish flavorings.
> *StoreWALL*, 644 F.3d at 1363 (Explanatory Notes can 'clarif[y]
> the scope of' a tariff term). 'Though obtained from different
> sources, the extracts of' heading 1603 'have very similar physical
> characteristic (appearance, odour, flavour, etc.) and chemical
> composition.' Explanatory Note 16.03. 'Extracts of fish are
> obtained, e.g., by concentrating water extracts of the flesh of
> herring or other fish or made from fish meal …; during the
> production all or part of the constituents which give the fishy
> taste (e.g., trimethylamine . . . in the case of sea fish) may be
> eliminated and such extracts therefore have characteristics
> similar to those of meat extracts.' *Id.* 'Extracts are used for
> making certain food preparations such as soups (whether or not
> concentrated) and sauces.' *Id.* In short, Explanatory Note 16.03
> confirms that '[e]xtracts' of heading 1603 are flavorings obtained
> by extracting the essence of meat or fish.

Cross Motion, ECF No. 71 at p. 14-15.

Then, in its Reply Brief, the Government again argued that "[f]ish extracts, like meat extracts, are flavorful, aromatic essences often found in stocks, soups, and sauces.  Reliable sources – dictionaries, encyclopedias, and Explanatory Notes 16.03 – confirm that."  Def. Reply in Supp. of Cross-Mot. for Sum. J. ECF No. 80 (September 13, 2024) ("Reply Brief") at 1.  It further argued that "[d]ictionaries, encyclopedias, and Explanatory Note 16.03 all demonstrate that fish extracts, like meat extracts, are savory flavorings 'used for making certain food preparations such as soups … and sauces.'"  Reply Brief, ECF No. 80 at 2, *quoting ENs* 16.03.

The Government took a third bite at the apple during oral argument, where it again argued that the "explanatory note is obviously a very good indication of what the heading means." Oral Arg. ECF No. 83 (February 12, 2025) ("Oral

Argument") at 53: 20-22.  During its argument, the Government reiterated its

interpretation of EN 16.03 as limiting fish extracts and meat extracts of heading

1603 to use as flavorings and "things like that," *id*. at 54: 4-8, notwithstanding

judicial precedent to the contrary.  *See*, *Jedwards Int'l, Inc. v. United States*, 161 F.

Supp. 3d 1354 (CIT 2016) (classifying krill oil used in human supplement capsules

under heading 1603 as an extract of a crustacean).   In sum, it characterized EN

16.03 as "pretty useful."  Oral Argument, ECF 83 at p. 54:10.

Having the benefit of the Government's argument on this issue, as well as the

plaintiff's argument on the tariff term's meaning, the Court then conducted an

extensive analysis of the meaning of the tariff term "extract" and found that the

imported merchandise properly falls under heading 1603 as an extract of fish. *Slip

Op. 25-54*, at 12-14.  In doing so, the Court rejected the Government's arguments on

the meaning of "extract," which arguments were tied in large part to the ENs and

other secondary sources it has previously cited to the court. Specifically, this Court

held:

> The Government takes a limited view and focuses on
> whether the merchandise maintains the color, taste, and
> aroma of fish. Def. Reply in Supp. of Cross-Mot. for S.J.
> ("Def. Reply") at 2 ("'extracts . . . of . . . fish' are savory
> flavorings containing the essence—the taste and aroma—
> of fish'"). Yet as Marcor and Jedwards make clear, these
> are not the only characteristics that indicate whether an
> end product maintains the essence of its source. See
> Marcor, 926 F. Supp. at 1132–36; Jedwards, 926 F. Supp
> at 1358–63. Of course, determining the essence of fish
> involves considering whether fish color, taste, and odor
> remain; but it also involves considering whether other
> characteristics of fish remain in the end product. Marcor
> and Jedwards both favor a holistic effort to define the

> 'essence' of a source product, including consideration of the makeup of the product, which means the Government's view is too restrictive. See Marcor, 926 F. Supp. at 1132–36; Jedwards, 926 F. Supp at 1358–63.

*Slip Op. 25-54*, at 12-13.

Instead, the Court turned to the legal construction of "extract" set out in those two earlier cases, *Marcor Development Corp. v. United States*, and *Jedwards Int'l, Inc., v. United States.*  See, *Marcor Development Corp. v. United States*, 926 F. Supp. 1124 (CIT 1996); *Jedwards Int'l, Inc. v. United States*, 161 F. Supp. 3d 1354 (CIT 2016).  Based on that existing case law, as well as having been informed by the parties of the impact of the GRIs, ENs, dictionaries and other case law on the meaning of the tariff term "extract," the Court concluded that the term captures preparations that "maintain the essence of the fish source." *Slip Op. 25-54*, at 13.

Just because the Court construed the legal meaning of the tariff term "extract" contrary to the Government's legal position does not create a "manifest error" or "fundamental flaw" in the Court's decision.  *Since Hardware (Guangzhou) Co.*, 37 F.Supp.3d at 1359.  Ironically, at oral argument the Government recognized that the Court should "look first at the plain meaning and using all the traditional tools of statutory construction to try to figure out what extracts of fish is . . .." Oral Argument, ECF 83 at p. 53: 17-20.  That is exactly what the Court did.  It construed the common and commercial meaning of the tariff term in a manner consistent with earlier constructions of the term and proceeded to apply that meaning to the facts before it, resulting in the decision in the case.

The Government is now back before this Court, arguing that the Court's failure to apply the ENs in lockstep with the Government's litigation position, especially its belief that fish extracts are similar to meat extracts under heading 1603, resulted in "factual or legal error." *Ford Motor Co. v. United States*, 30 CIT 1587, 1588 (2006). Clearly, the ENs, as nonbinding interpretative notes, cannot be the basis for judicial legal error by themselves. *Archer Daniels Midland Co. v. United States,* 561 F.3d 1308, 1315 (Fed. Cir. 2009) (Explanatory Notes "may be generally useful as guides to the scope of unclear HTSUS headings, [but] they are not legally binding"). Thus, the Court did not overlook any binding or precedential guidance found in the Explanatory Notes, as it does not exist. Nor did the Court overlook any informative value therefrom when it construed the legal meaning of the tariff consistent with the way courts have construed the tariff for hundreds of years. As cited above, the Government's argument comparing fish extracts with meat extracts was put before the Court on multiple occasions and was part of the Government's overall argument on the construction of the tariff term "extract" that the Court analyzed and dismissed as "too restrictive." *Slip Op. 25-54*, at 13. As such no "manifest error or fundamental flaw" exists in the Court's decision. The Government's motion for reconsideration should therefore be denied for failing to meet the required threshold necessary for reconsideration.

**B. The Court Classified the Imported
      Merchandise in its Condition as Imported.**

The second argument the Government raises in its motion for reconsideration is its belief that the Court did not classify the imported merchandise in its condition as imported.  Again, this is another attempt to relitigate an issue previously put before the Court.

The Government raised this issue twice in its Cross Motion.  First, at page 22 of its Cross Motion, it argued that "[m]erchandise must be classified in its imported state, not broken down into its components . . .."  Second, at page 27 of its Cross Motion it reiterated that "[i]nstead, the merchandise as imported, not broken down into its components, . . . must contain fish."  In both cases it cited *Rollerblade, Inc. v. United States*, 112, F.3d 481, 487 (Fed. Cir. 1997).

Now it is back, citing different authority for this same argument.  *See* Def. MR, ECF No. 87 at pp. 4-8, *citing Mitsubishi Power Americas, Inc. v. United States*, Slip Op. 25-53, 2025 WL 1233625 (Ct. Int'l Trade April 29, 2025) and *Kachurin Drug Co. v. United States*, 24 Cust. Ct. 264 (1950).  Neither of these cases establish a fundamental or significant change in law that would require this Court to reconsider its decision. Nor, as trial level cases, are either of these cases controlling authority on this Court.

The Government points to no legal authority that shows that the Court erred in following the *Jedwards* and *Marcor* cases, or that it erred in construing the tariff term "extract" to be preparations that contained the essence of the substance from which they are derived.  Having interpreted the law, the Court then applied it to

10

the facts and determined that the imported merchandise, based in part on the high levels of fatty acids present in it, contained the essence of the fish from which those fatty acids were derived. Thus, the Court did not "classif[y] sub-molecular portions of the imported merchandise . . ." as alleged by the Government (Def. MR, ECF No. 87 at p. 6). Rather, the Court determined that the imported merchandise contained the essence of the fish from which it was derived, that the essence was imparted in large part by the fatty acids present in the imported merchandise and which were derived from the fish and classified the imported products accordingly. As such, the Government's disagreement with the Court's holding is not a sufficient basis to grant a motion for reconsideration and amounts to nothing more than "simply, dissatisfaction with this Court's interpretation of the statutory definition in issue." *V.G. Nahrgang Co. v. United States,* 6 CIT 210, 211 (1983).

### C. The Court Correctly Found that the Imported Merchandise Contains the Essence of Fish.

For the third time, the Government argues the imported merchandise cannot be classified in heading 1603 because it does not predominantly consist of the same substance as found in crude fish oil, as it consists of fatty acids chemically extracted from that crude fish oil and then transformed from a triglyceride ester form to an ethyl ester form so they could be concentrated to create the imported merchandise. Def. MR, ECF No. 87 at 8-10. This argument, of course, was the Government's principal argument in this case, and as such was raised multiple times in its Cross Motion and its Reply Brief. *See*, Cross Motion, ECF 71, at pp 16-21; Reply Brief,

ECF 80, at pp 4-8.   Again, the Government fails to identify any manifest error or

fundamental flaw in the Court's decision that would require the Court to reconsider

it simply because the Court's decision is unfavorable to the Government.

Instead, the Government is relitigating its position that the legal meaning of

heading 1603 only provides for goods if they "predominately consist of the same

substance as their source in the same form."  Def. MR, ECF No. 87 at 9.  The Court

addressed and rejected this argument in a detailed and lengthy analysis in its

opinion.  See *Slip Op. 25-54*, at 14-19.  Specifically, the Court concluded:

> In several critical respects, the imported merchandise maintains
> the essence of the fish source. From a qualitative perspective, it
> retains a form, odor, taste, color, and health profile similar to the
> fish source. Id. at ¶¶ 29–32. And from a quantitative perspective,
> the imported merchandise consists of: fatty acids derived from the
> source; glycerides, oligomers, and triglycerides that occur
> naturally in the crude fish oil; and no more than 1 percent added
> tocopherol to prevent oxidation. Id. at ¶¶ 23–28, 34, 36. These
> facts uniformly support the conclusion that the imported
> merchandise maintains the essence of the fish source and, in
> turn, confirm that it is an extract of fish.

Id. at 18-19.  The Court's interpretation of the stipulated facts and application of

the law to those facts does not constitute a significant flaw in its conduct in

resolving the cross motions for summary judgment that were before it.


In sum, the Court analyzed this matter properly.  "[F]irst, [it] construed the

relevant classification headings; and second [it] determined under which of the

properly construed tariff terms the merchandise at issue falls."  *Bausch & Lomb,*

*Inc. v. United States*, 148 F. 3d 1363, 1365 (Fed. Cir. 1998) (citing *Universal Elects.,*

*Inc. v. United States*, 112 F.3d 488, 491 (Fed. Cir. 1997). Because the tariff term "extract" was not defined in either the HTSUS or its legislative history, the Court construed the common meaning of that tariff term, and in so doing had at its disposal existing case law construing that term, as well as dictionaries, scientific authorities, the *EN*s and other information brought to the Court's attention by the parties. Based on the above, the Court construed the tariff term "extract" to "turn on whether it maintains the essence of the fish source." *Slip Op. 25-54*, at 12. Then, the Court reviewed the facts put before it by the parties, the vast majority of which were stipulated as uncontested, and held that "[t]hese facts uniformly support the conclusion that the imported merchandise maintains the essence of the fish source and, in turn, confirm that it is an extract of fish." *Id*. at 19. No "fundamental or significant flaw" exists in the Court's decision, and the Government has been unable to create one in its motion for reconsideration as it simply repeats its now rejected arguments. The Government's motion, having failed to establish that the Court's decision was "manifestly erroneous," must be denied and the original decision left undisturbed.

13

<u>CONCLUSION</u>

For the reasons stated herein, the Defendant's Motion for Reconsideration must be denied.  This Court should simply enter an order denying the motion.


Respectfully submitted,


<u>/s/Frederic D. Van Arnam, Jr.</u>

Frederic D. Van Arnam, Jr.
Ashley J. Bodden
BARNES, RICHARDSON & COLBURN, LLP
45 Broadway, Suite 3130
New York, NY 10006
Tel.: (212) 725-0200, ext. 126
Fax: (212) 889-4135
Email: rvanarnam@barnesrichardson.com
*Counsel for BASF Corporation*


Dated: July 2, 2025
        New York, NY

14

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Standard Chambers Procedures of the U.S. Court of
International Trade, the undersigned, counsel for plaintiff in this matter, certifies
that Plaintiff's Opposition to Defendant's Motion for Reconsideration contains 3,613
words, as determined by Microsoft Word.  This word count is within the limit of
14,000 words set forth in Rule 2(B).

/s/Frederic D. Van Arnam, Jr.


Frederic D. Van Arnam, Jr.
Ashley J. Bodden
**BARNES, RICHARDSON & COLBURN, LLP**
45 Broadway, Suite 3130
New York, NY 10006
Tel.: (212) 725-0200, ext. 126
Fax: (212) 889-4135
Email:  rvanarnam@barnesrichardson.com
*Counsel for BASF Corporation*


Dated: July 2, 2025
        New York, NY